F I L E D
United States Court of Appeals
Tenth Circuit

JUL 13 2000

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

GHINTARAS GRAZHEES; ALMA
GRAZHEES,

       Petitioners,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

       Respondent.

No. 99-9532
( No. A71 978 749)
(Petition for Review)

---

ORDER AND JUDGMENT  *

---

Before **BRORBY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*       This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioners Ghintaras and Alma Grazhees seek review of the Board of

Immigration Appeals' (BIA) decision affirming the Immigration Judge's denial of

their applications for asylum and withholding of deportation under the

Immigration and Nationality Act (INA).  We exercise our jurisdiction under

8 U.S.C. § 1105a, [1] and affirm.

Petitioners, natives and citizens of Lithuania, came to the United States in

September 1991 on nonimmigrant visitor visas.  In September 1992, they were

placed in deportation proceedings for overstaying their visas.  Petitioners

conceded deportability and sought asylum based on Mr. Grazhees's anti-

communist political views and his persecution for those views in his home

country. [2]  In June 1993, after a hearing at which only Mr. Grazhees testified, the

Immigration Judge issued an oral decision denying petitioners' application for

asylum and withholding of deportation.  The Immigration Judge's decision was

---

[1]     8 U.S.C. § 1105a was amended by the transitional rules in the Illegal
Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L.
No. 104-208, 110 Stat. 3009 (1996), which now governs judicial review.
"Because petitioners' deportation proceedings commenced before April 1, 1997,
IIRIRA's permanent 'new rules' do not apply to this case," however, IIRIRA's
"transitional rules" apply "because the BIA's order was filed more than thirty days
after IIRIRA's September 30, 1996 date of enactment."     Rivera-Jimenez v. INS  ,
No. 97-9513, 2000 WL 710502, at *1 n.1 (10th Cir. June 2, 2000).

[2]     Alma Grazhees's application for asylum and withholding of deportation is
derivative of her husband's application.     See 8 U.S.C. § 1158(b)(3).

based on the State Department's assessment of Lithuania in its Country Reports

on Human Rights Practices for 1991 and 1992 (Country Reports), submitted by

the INS as proof of changed country conditions, the State Department's advisory

opinion, and the Immigration Judge's doubts about Mr. Grazhees's credibility.

See Admin. R. at 31-33.

According to his testimony and statement in support of his asylum

application, Mr. Grazhees's departure from Lithuania was precipitated by his

arrests for political activity, interrogations, beatings, suspicious car accident, and,

ultimately, dismissal from his job in 1991.  Crediting his testimony for purposes

of the appeal before it, the BIA assumed Mr. Grazhees had met his burden to

show past persecution.  [3]  See id. at 3.  It found, however, that, based on the

Country Reports, the conditions in Lithuania had changed since petitioners'

departure, and noted that petitioners failed to present any probative documentary

evidence to the contrary.  [4]  See id.  Hence, the BIA concluded that the INS

---

[3]     The Immigration Judge did not find Mr. Grazhees's testimony credible.        See
Admin. R. at 32.

[4]     The State Department's 1991 Country Reports describes the changing
situation in Lithuania after Lithuanian authorities ultimately took over the
government apparatus from severely repressive Soviet rule.        See Admin. R. at
89-96.  Among other things, the new government instituted laws intended to
protect the rights of Lithuanian citizens.      See id. at 91.  In addition "[f]reedom of
speech, press, assembly, association, and religion are provided in law and

(continued...)

rebutted the presumption that Mr. Grazhees had a well-founded fear of future persecution, arising out of his past persecution, and that petitioners did not qualify for asylum or withholding of deportation.   See id. at 3-4.  In reaching this decision, the BIA did not rely on the advisory opinion of the Department of State, prepared for this case. [5]   See id. at 3.

Asylum and withholding of deportation are the two avenues of relief available to a deportable alien who claims he will be persecuted if deported.   See Kapcia v. INS , 944 F.2d 702, 706 (10th Cir. 1991).  In order to be eligible for asylum, an alien must first establish refugee status.   See id.  The Attorney General can then exercise discretion to grant asylum to an otherwise deportable alien.   See 8 U.S.C. § 1158(b)(1).  In order to garner refugee status, an alien must establish "he is unable or unwilling to return to 'any country of such person's nationality . . . because of [past] persecution or a well-founded fear of persecution

_____

[4](...continued)
respected in practice."   Id.  The 1992 Country Reports notes that many of the officials elected into the Lithuanian government haled from the former communist party, see id. at 83, but the government was committed to recognizing individual rights and freedoms,   see id. at 84-88.

[5]     The State Department's March 29, 1997 advisory opinion characterizes Mr. Grazhees's political activity and fear of persecution as relating to the former occupying Soviet military and security forces.   See Admin. R. at 97.  Mr. Grazhees contested this characterization on appeal to the BIA, claiming his activity related to communist domination and that he suffered and feared suffering at the hands of Lithuanian communists.   See id. at 12-13.

-4-

on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Nazaraghaie v. INS , 102 F.3d 460, 462 (10th Cir. 1996) (quoting 8 U.S.C. § 1101(a)(42)(A)). "[T]he well-founded fear of persecution standard . . . require[s] a subjective 'fear' component and an objective 'well-founded' component." Kapcia , 944 F.2d at 706. The subjective component is not relevant unless the alien has proved the objective component. See id. It is the applicant's burden to meet this objective component with "credible, direct, and specific evidence in the record." Nazaraghaie , 102 F.3d at 462 (quotation omitted).

"The BIA's finding that appellant was not eligible for asylum 'must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. at 463 (quoting INS v. Elias-Zacarias , 502 U.S. 478, 481 (1992)). "This court reviews the BIA's legal determinations de novo." Rivera-Jimenez v. INS , 2000 WL 710502, at *2. "We will, however, accord deference to the BIA's legal determinations unless they are clearly contrary to the statute's language or to congressional intent." Id.

On appeal, petitioners argue that: (1) the regulation found at 8 C.F.R. § 208.13(b)(1) and the statutory definition of refugee found at 8 U.S.C. § 1101(a)(42)(A) are inconsistent; and (2) the BIA abused its discretion by not

undertaking the "compelling reasons" analysis found in 8 C.F.R. § 208.13(b)(1)(ii).

Petitioners failed to raise either of these issues to the BIA. See Admin. R. at 5-17. As a result, they did not exhaust their administrative remedies and we do not have jurisdiction to consider these issues. See Nguyen v. INS , 991 F.2d 621, 623 n.3 (10th Cir. 1993) (stating that this court does not address issues not raised on appeal to the BIA); see also Rivera-Zurita v. INS , 946 F.2d 118, 120 n.2 (10th Cir. 1991) ("The failure to raise an issue on appeal to the [BIA] constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter."). Because the BIA was empowered to consider both of petitioners' issues–since neither are constitutionally based–petitioners' issues do not fall within the exception to administrative waiver. See Akinwunmi v. INS , 194 F.3d 1340, 1341 (10th Cir. 1999) ("Courts have carved out an exception to the exhaustion requirement for constitutional challenges to the immigration laws, because the BIA has no jurisdiction to review such claims.").

We AFFIRM the BIA's decision denying petitioners' application for asylum and withholding of deportation.

Entered for the Court

Wade Brorby
Circuit Judge