# Matter of D-I-M-, Respondent

*Decided February 12, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  When evaluating an application for asylum, the Immigration Judge must make a specific finding that the applicant has or has not suffered past persecution based on a statutorily enumerated ground and then apply the regulatory framework at 8 C.F.R. § 1208.13(b)(1) (2007).

(2)  If the applicant has established past persecution, there is a presumption of a well-founded fear of persecution in the future and the burden shifts to the Department of Homeland Security to prove by a preponderance of the evidence that there are changed country conditions, or that the applicant could avoid future persecution by relocating, and that it would be reasonable to do so under all of the circumstances.

FOR RESPONDENT:  Gay L. Hellman, Esquire, Oklahoma City, Oklahoma

BEFORE: Board Panel: OSUNA, Acting Chairman; COLE and PAULEY, Board Members.

COLE, Board Member:

In a decision dated April 18, 2006, an Immigration Judge found the respondent removable and ineligible for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988), but granted him voluntary departure. The respondent has filed a timely appeal from that decision. The Department of Homeland Security ("DHS") has not filed a brief on appeal. The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

The respondent, a native and citizen of Kenya, testified in support of his applications for asylum and withholding of removal that he was targeted by members of the Mungiki sect after advising local school children not to join the group or subscribe to its beliefs. The respondent stated that he was severely beaten by Mungiki members and that the sect was responsible for burning down his house.

In his decision, the Immigration Judge found that the respondent suffered past persecution at the hands of the Mungiki.[1] However, the Immigration Judge denied the respondent's application for asylum because he found that the respondent could safely relocate to another part of Kenya.  The Immigration Judge noted that the 2005 Department of State country report on human rights practices for Kenya indicated that the Mungiki were "less organized" than in previous years, and that the police have made efforts to curb the sect despite some sympathy within the government ranks.  *See* Committees on International Relations and Foreign Relations, 109th Cong., 2nd Sess., *Country Reports on Human Rights Practices for 2005* 288, 290 (Joint Comm. Print 2006); Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Kenya Country Reports on Human Rights Practices - 2005* (May 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61575.htm.  Emphasizing that the respondent was not a public figure who could be considered a high-level enemy of the Mungiki, the Immigration Judge rejected the respondent's suggestion that the Mungiki were so well organized that they could track him down anywhere in Kenya and concluded that the respondent could safely relocate in one of the more metropolitan areas of the country.

We adopt the Immigration Judge's past persecution finding, as the DHS has not challenged any part of the Immigration Judge's decision on appeal.  The only issue before us is whether the Immigration Judge applied the proper regulatory framework after determining that the respondent suffered past persecution.  We find that the Immigration Judge did not apply the proper regulatory framework in this case and will therefore sustain the respondent's appeal.

An alien applying for relief or protection from removal has the burden of proving that he or she satisfies the applicable eligibility requirements and merits a favorable exercise of discretion.  *See* section 240(c)(4)(A) of the Immigration and Nationality Act, 8 U.S.C.A. § 1229a(c)(4)(A) (West 2005).  In the context of asylum, an applicant has the burden of demonstrating that he or she is a refugee, within the meaning of the Act.  *See* section 208(b)(1)(B)(i) of the Act, 8 U.S.C.A. § 1158(b)(1)(B)(i) (West 2005); *see also Krastev v. INS*, 292 F.3d 1268, 1270 (10th Cir. 2002).  The Act defines a refugee as "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the

---

[1] Because the Immigration Judge did not articulate what statutorily enumerated ground the past persecution finding was based on, this issue should be addressed on remand.  *See generally Matter of S-P-*, 21 I&N Dec. 486 (BIA 1996).

protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (2000). An applicant can establish refugee status by showing that he or she either suffered past persecution or has a well-founded fear of future persecution. *See* 8 C.F.R. §§ 1208.13(b)(1), (2) (2007); *see also Niang v. Gonzales*, 422 F.3d 1187, 1194 (10th Cir. 2005).

The basis on which refugee status is established dictates the regulatory framework applicable in determining overall asylum eligibility. Where the Immigration Judge finds that the applicant is a refugee based on past persecution, the applicant is presumed to have a well-founded fear of future persecution on the basis of the original claim. 8 C.F.R. § 1208.13(b)(1). In that case, the burden shifts to the DHS to establish by a preponderance of the evidence either that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in [his or her] country of nationality," or that the applicant could avoid future persecution "by relocating to another part of [his or her] country of nationality . . . , and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. §§ 1208.13(b)(1)(i)(A), (B), (ii); *see also Niang v. Gonzales*, *supra*. If the DHS rebuts the presumption, the asylum application will be denied unless the applicant demonstrates "compelling reasons for being unwilling or unable to return" to his or her country of nationality, or "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. §§ 1208.13(b)(1)(iii)(A), (B); *see also Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (noting that this approach is also known as "'humanitarian' asylum").

An applicant may also establish refugee status by showing that he or she has a well-founded fear of future persecution in the absence of, or unrelated to, any past persecution. 8 C.F.R. §§ 1208.13(b)(1), (2); *see also Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005). For example, the applicant could demonstrate a well-founded fear of persecution on a basis other than that which gave rise to the past persecution. In such cases, with one exception, it is the applicant who bears the burden of establishing by a preponderance of the evidence that it would not be reasonable for him or her to internally relocate. 8 C.F.R. § 1208.13(b)(3)(i). The exception arises in cases in which the persecutor is a government or is government sponsored, or the applicant has established persecution in the past. In these cases it is presumed that internal relocation would not be reasonable, unless the DHS establishes by a preponderance of the evidence that, under all of the circumstances, it would be reasonable for the applicant to relocate. 8 C.F.R. § 1208.13(b)(3)(ii). Factors that may be relevant in determining the reasonableness of relocation include whether the applicant would face other serious harm in the place of suggested

relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties. *See* 8 C.F.R. § 1208.13(b)(3).

Because the regulations set forth varying burdens of proof depending on whether an applicant suffered past persecution, it is of paramount importance that Immigration Judges make a specific finding that an applicant either has or has not suffered past persecution. The instant case is illustrative of this principle. Here, because the Immigration Judge made a specific finding of past persecution, the respondent, by mandate of the regulations, was entitled to a rebuttable presumption of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). However, the Immigration Judge did not explicitly apply the presumption and failed to shift the burden of proof to the DHS to prove by a preponderance of the evidence that the respondent can avoid future persecution by relocating to another part of Kenya, and that it would be reasonable for him to do so. Instead, the Immigration Judge concluded, without specific reference to the voluminous background materials in the record, that the respondent could safely relocate to a metropolitan area of Kenya.

The Board has limited fact-finding abilities in deciding appeals. *See* 8 C.F.R. § 1003.1(d)(3) (2007); *Matter of S-H-*, 23 I&N Dec. 462 (BIA 2002). We will therefore remand the record to the Immigration Judge for further proceedings to determine whether the DHS carried its burden to establish that the respondent can avoid future persecution by relocating within Kenya, and whether relocation is reasonable under all of the relevant circumstances.[2] On remand, the DHS should be given the opportunity to develop the record on the issue of internal relocation, as it has the burden of proof. In making the ultimate determination on the matter, the Immigration Judge should specifically consider all of the testimony and evidence contained in the record, including the background information. Accordingly, the respondent's appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[2] Inasmuch as we are remanding the record for further proceedings, we do not reach the question whether the Immigration Judge's factual findings were clearly erroneous, as has been suggested by the respondent on appeal.