# Matter of K-S-H-, Respondent

*Decided November 17, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A single attempt to report an incident of harm by private actors to local police, without further harm from the police themselves or evidence of their widespread collusion with the alleged persecutors, does not establish that the government, as a whole, is unable or unwilling to protect a respondent from persecution.

FOR THE RESPONDENT: Ashwani K. Bhakhri, Esquire, Burlingame, California

BEFORE: Board Panel: MULLANE, CREPPY, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The respondent appeals from the Immigration Judge's December 6, 2022, decision, denying his applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").[1]    Sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018). On appeal, the respondent challenges the Immigration Judge's determination that he did not demonstrate persecution by forces the government is unable or unwilling to control. The appeal will be dismissed.

The respondent is a Sikh and a native and citizen of India. He fears persecution in India by members of the Hindu religion and the RSS party,[2] who attacked and threatened him on two occasions in May and August 2018. He testified that on both occasions, his attackers punched and kicked him, warning him of bad consequences if he did not end his relationship with his Hindu girlfriend, the sister of some of the attackers. The respondent further testified that when he attempted to report the first attack, the police refused

---

[1]   The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. § 1208.16(c) (2025); 8 C.F.R. § 1208.18(a) (2020).

[2]   The acronym "RSS" is not spelled out in the record of proceedings, but the respondent identified it as a private nationalist Hindu organization, out of which the political party, Bharatiya Janata Party, emerged.

to take his report because his girlfriend's father was an influential member of the Bharatiya Janata Party ("BJP"). Specifically, the police officer told the respondent that he was "crazy" for trying to file a report against a BJP member and that he would be detained if he tried to make a report.

The Immigration Judge found the respondent credible. He determined that although the respondent was harmed on account of his religion, he did not demonstrate that such harm was committed by the government or forces the government was unable or unwilling to control. The Immigration Judge acknowledged that a single police officer refused to take the respondent's report and cited his girlfriend's father's position in the BJP. However, the Immigration Judge found that the girlfriend's father had taken no part in the attacks, that there was no evidence he had interfered with the police taking the respondent's report, and that the BJP was not an official part of the government at that time. The Immigration Judge also found that the respondent never sought any further assistance from the government after unsuccessfully attempting to file a report of the initial incident. The Immigration Judge concluded that the respondent's fear of future persecution was not objectively reasonable as he has had no contact with his girlfriend for 5 years, and the Immigration Judge found there was no reason to believe his girlfriend's family would still seek to harm him.

The Immigration Judge did not clearly err in finding that the respondent did not establish that the harm he suffered in India was "committed by the government[] or by forces that the government was unable or unwilling to control." *Rodriguez Tornes v. Garland*, 993 F.3d 743, 751 (9th Cir. 2021); *see also Matter of C-G-T-*, 28 I&N Dec. 740, 743 (BIA 2023) (holding that whether the government is unable or unwilling to protect an individual from persecution is a question of fact that the Board reviews for clear error). The respondent claims on appeal that the police officer's threat to detain him and refusal to take his report because of his girlfriend's father's involvement with the BJP establishes that the government was unable or unwilling to control his alleged persecutors.

The respondent does not challenge the Immigration Judge's finding that he never sought any other governmental assistance after this single attempt to file a report. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069 (9th Cir. 2017) (en banc) ("Whether a victim has reported or attempted to report violence or abuse to the authorities is a factor that may be considered, as is credible testimony or documentary evidence explaining why a victim did not report."). Additionally, while the police officer seemingly feared the girlfriend's father, there is no evidence that the father was involved in the failure to take the report or the attacks against the respondent. Moreover, the

political party to which the father belonged was not in power at the time. Overall, one local police officer's refusal to take a report because of concerns about a local BJP member does not establish that the Government of India, as a whole, would be unable or unwilling to control the respondent's alleged persecutors. *See Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (holding that "so long as the record contains 'contrary evidence' of a 'kind and quality' that a reasonable factfinder could find sufficient, a reviewing court may not overturn the agency's factual determination" and that "a reviewing court must be mindful too that the agency, like any reasonable factfinder, is free to 'credit part of [a] witness' testimony without' necessarily 'accepting it all.'" (second alteration in original)).

Our conclusion in this case is supported by the decisions of several United States Courts of Appeals, which, although not binding in this jurisdiction, are persuasive. In *Singh-Kar v. Bondi*, 137 F.4th 94, 101 (2d Cir. 2025), the Second Circuit found that "[t]estimony that the police failed to assist [an alien] on one occasion, without more, does not establish an entire government's inability or unwillingness to protect him." When the alien in that case attempted to file a police report, he was made to wait for more than 2 hours, slapped twice in the face, and thrown out of the police station. *Singh-Kar*, 137 F.4th at 99. The court found that this "single, minor incident of police misconduct" and general country conditions in the record were insufficient to establish that the government, as a whole, would be unable or unwilling to assist him. *Id.* at 103–04.

We also find persuasive the Seventh Circuit's reasoning in *Vahora v. Holder*, 707 F.3d 904, 909–10 (7th Cir. 2013), that a single conversation with a nonsupervisory police officer in which the officer told the alien not to identify his persecutors did not mean the government was unable or unwilling to assist him. Similarly, the Seventh Circuit in *Osorio-Morales v. Garland*, 72 F.4th 738, 743 (7th Cir. 2023), observed that "a one-off conversation with an unhelpful officer does not necessarily show that a government is 'unable or unwilling' to protect a victim." (Citation omitted.)

Finally, our conclusion is consistent with the Tenth Circuit's decision in *Singh v. Bondi*, 130 F.4th 848 (10th Cir. 2025). The Tenth Circuit found that an applicant did not establish the government was unable or unwilling to protect him where he attempted to report an attack but was told to return the next day and then "kicked" out of the police station. *Singh*, 130 F.4th at 864.

We recognize that in *Davila v. Barr*, 968 F.3d 1136, 1142–44 (9th Cir. 2020), the Ninth Circuit, in whose jurisdiction this case arises, held that an alien satisfied her burden of proving that the Nicaraguan Government was

unable or unwilling to control her abuser based on her credible testimony that her abuser bribed the police officers she contacted and then beat her more severely in retaliation for her attempt to report, her testimony that the police had been similarly nonresponsive to her mother's reports of domestic violence, and country conditions evidence of the Nicaraguan Government's indifference toward domestic abuse. The court found that the alien's testimony and documentary evidence explained why she did not report subsequent abuse, including that she was harmed as a result of reporting. *Davila*, 968 F.3d at 1143; *see also Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) (holding that an applicant need not report abuse if doing so would be futile or dangerous).

The respondent's case is readily distinguishable from *Davila*, as he faced no physical violence during or after his attempt to report his harm to the police. Nor has the respondent even argued on appeal that any further attempts to report at a local or higher level of the government would be futile or dangerous. *See Matter of C-G-T-*, 28 I&N Dec. at 743.[3]

We hold that a single attempt to report an incident of harm by private actors to local police, without further harm from the police themselves or evidence of their widespread collusion with alleged persecutors, does not establish that the government, as a whole, is unable or unwilling to protect a respondent from persecution. Thus, the Immigration Judge permissibly found, on the facts of this case, that the respondent did not establish that the government was unable or unwilling to control his alleged persecutors. *See Truong v. Holder*, 613 F.3d 938, 941–42 (9th Cir. 2010) (finding that the asylum applicants did not establish that the government was "complicit in or unwilling to combat" the applicants' alleged persecution). Accordingly, on this record, we affirm the Immigration Judge's determination that the respondent has not established past persecution. As such, he must establish a well-founded fear of future persecution to satisfy his burden for asylum. 8 C.F.R. § 1208.13(b) (2020); *see also Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008).

On appeal, the respondent's counsel opines that the respondent's girlfriend's family members still have an interest in harming the respondent

---

[3] We also recognize that the Ninth Circuit has held that an applicant is not required to establish that the government would be unable or unwilling to control persecution on a country-wide basis, and the inquiry is to the "home city or area." *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1122 (9th Cir. 2004). Our conclusion in this case is not inconsistent with this approach, as our analysis does not require an applicant to seek assistance outside his home city or area. In this case, the respondent never sought other police assistance within his home city or area.

because honor killings are prevalent in India, the family was humiliated, and the only way to "revive their reputation" is by killing the respondent. However, counsel does not cite to any record evidence pointing to the family having an interest in, or the respondent's fear of falling victim to, an honor killing. Unsupported statements of counsel are not facts in evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984). As such, the respondent has not established clear error in the Immigration Judge's finding that he has not shown continuing interest from his girlfriend's family members in harming him. We thus affirm the Immigration Judge's determination that the respondent did not establish an objectively reasonable fear of future persecution. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 590–91 (BIA 2015) (holding that "whether an asylum applicant has established an objectively reasonable fear of persecution" is a legal determination the Board reviews de novo).

Based on the foregoing, we conclude that the respondent has not met his burden to establish eligibility for asylum and withholding of removal. INA §§ 208(b)(1)(B)(i), 241(b)(3)(A), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); *see also Davila*, 968 F.3d at 1142 ("An applicant who fails to satisfy the lower standard for asylum necessarily fails to satisfy the more demanding standard for withholding of removal, which involves showing by a 'clear probability' that the [alien's] life or freedom would be threatened in the proposed country of removal."); *Ornelas-Chavez*, 458 F.3d at 1056–58 (applying the "unable or unwilling" standard in the withholding context). As the above grounds are dispositive of the respondent's applications for asylum and withholding of removal, it is not necessary to address his remaining appellate argument. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

We affirm the Immigration Judge's denial of the respondent's request for protection under the CAT. The Immigration Judge found that the respondent could relocate to avoid future harm and that he had not established he would more likely than not be tortured upon return to India. The respondent argues on appeal that the Immigration Judge erred in finding him ineligible for CAT on the grounds that he could internally relocate within India to avoid torture because the Immigration Judge did not perform an individualized assessment of his relocation prospects. This argument does not establish clear error in the Immigration Judge's finding that the respondent has not demonstrated that he would be targeted if removed. *See Matter of R-A-F-*, 27 I&N Dec. 778, (A.G. 2020) (holding that the Board reviews Immigration Judge's predictions about what will happen for clear error). The Immigration Judge

did not clearly err in finding that the respondent has had no contact with his girlfriend in 5 years and that there is no reason to suspect that her family members would continue to target him if he were to return to India. We therefore affirm the Immigration Judge's determination that the respondent has not established that he will more likely than not be tortured in India. *See* 8 C.F.R. § 1208.16(b) (2025); *see also Matter of J-F-F-*, 23 I&N Dec. 912, 917–18, 918 n.4 (A.G. 2006) (holding that eligibility for CAT protection cannot be established by stringing together a series of suppositions to show that it is more likely than not that torture will result if the evidence does not establish that each step in the hypothetical chain of events is more likely than not to happen). The appeal will be dismissed.

**ORDER**: The appeal is dismissed.

**NOTICE**: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2018).